(No. 47735.—

THE TOWN OF CICERO, Appellee, v. FOX VALLEY TROTTING CLUB, INC., et al., Appellants.

*Opinion filed Oct. 1, 1976.—Rehearing denied Dec. 2, 1976.*

12

SCHAEFER, J., concurring.

KLUCZYNSKI, J., concurring in part and dissenting in part.

Nash, Ahern & McNally, of Chicago, for appellants.

Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Harry A. Young, Jr., Ronald G. Silbert, and Walter M. Wlodek, of counsel), for appellee.

MR. JUSTICE CREBS delivered the opinion of the court:

This is a direct appeal, pursuant to our Rule 302(b) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(b)), from a judgment of the circuit court of Cook County granting plaintiff's motion for summary judgment.

Pursuant to its authority as a home rule unit under article VII, section 6(a), of the 1970 Constitution (Ill. Const. 1970, art. VII, sec. 6(a)), plaintiff, the town of Cicero, enacted an ordinance levying a "Municipal Admission Tax," effective December 17, 1971. This ordinance (hereinafter referred to as the Ordinance) imposed a tax upon all amusements within the town of Cicero at the rate of 10 cents for each person witnessing, participating in or entering the grounds or enclosure of a place of amusement or entertainment. Defendants, Fox Valley Trotting Club, Inc., Chicago Downs Association, Inc., and National Jockey Club, Inc., are Illinois corporations licensed and engaged in the business of conducting thoroughbred and harness racing meets at Sportman's Park racetrack, which is wholly located within the municipal boundaries of the town of Cicero.

Plaintiff filed suit against defendants, alleging that, on or about September 28, 1974, agents for defendants advised plaintiff that defendants would no longer pay the admissions tax imposed by the Ordinance. Plaintiff also alleged that defendant Fox Valley Trotting Club, Inc. (hereinafter referred to as Fox Valley), had refused to pay a tax of $56,097.30, due and owing as of September 7, 1974. Accordingly, plaintiff sought a declaratory judgment that the Ordinance was valid and applicable to defendants. In addition, plaintiff requested a declaration that certain provisions of the Illinois Horse Racing Act (Ill. Rev. Stat. 1973, ch. 8, par. 37j1) and the Illinois Harness Racing Act (Ill. Rev. Stat. 1973, ch. 8, par. 37s.19) were void insofar as they purported to bar plaintiff from levying the tax in question. Lastly, plaintiff sought an order directing the

defendants to pay the tax and a judgment against Fox Valley in the amount of $56,097.30.

Defendants joined in filing a motion to dismiss, and plaintiff filed a motion for summary judgment. The trial court denied the defendants' motion and granted that of plaintiff in all particulars, except that the court reserved ruling as to the amount of the monetary damages to which the plaintiff might be entitled. Defendants have appealed, praying that the judgment of the trial court be reversed and that the Ordinance be declared unconstitutional and void.

The trial court's judgment order was entered on June 2, 1975. At that time, the Illinois Horse Racing Act (Ill. Rev. Stat. 1973, ch. 8, par. 37a *et seq.*) and the Illinois Harness Racing Act (Ill. Rev. Stat. 1973, ch. 8, par. 37s *et seq.*) contained provisions barring local governmental units from levying various taxes and fees (Ill. Rev. Stat. 1973, ch. 8, pars. 37j1, 37s.19). Subsequently, the General Assembly enacted Public Act 79—1185 (Laws of 1975, at 3690). This act, which became effective January 1, 1976, repealed the Illinois Horse Racing and Harness Racing Acts (hereinafter referred to as the Racing Acts) and substituted thereby the Illinois Horse Racing Act of 1975. Section 27(f) of Public Act 79—1185 provides in pertinent part:

> "[A]ny municipality that has a Racing Board licensed horse race meeting at a race track wholly within its corporate boundaries may charge a local amusement tax not to exceed 10 cents per admission to such horse race meeting by the enactment of an ordinance." (Laws of 1975, at 3713.)

When viewed against the background of the preceding factual recitation, it becomes evident that the General Assembly, through enactment of Public Act 79—1185, has now authorized the precise tax which plaintiff has sought to levy against the defendants.

Were the only issue in this case the present validity of the ordinance in question, we would judge the Ordinance

in light of the General Assembly's passage of Public Act 79—1185. (*Rios v. Jones,* 63 Ill. 2d 488, 494-95; *Illinois Chiropractic Society v. Giello,* 18 Ill. 2d 306.) However, the trial court made a finding that the defendants were liable for taxes assessed from the effective date of the Ordinance. By arguing that the plaintiff had no authority to adopt the Ordinance, defendants by implication challenge the propriety of that finding. Moreover, the trial court reserved ruling as to the amount of monetary damages to which the plaintiff might be entitled. Consequently, it becomes necessary for us to determine whether plaintiff was authorized to levy this tax as of December 17, 1971, the effective date of the Ordinance.

We consider first the defendants' contention that the State has preempted the field of horse racing, thereby precluding any local enactments in that same area. Defendants concede that provisions in the Racing Acts which bar local taxation of racing licensees are ineffective to defeat an otherwise valid exercise of home rule authority, since both acts antedated the effective date of the 1970 Constitution. (See *Mulligan v. Dunne,* 61 Ill. 2d 544, and cases cited therein.) However, defendants assert that "because of the all-encompassing, pervasive nature of the Racing Acts, as administered by the Racing Board, the State has preempted the field of horse racing." As a result, defendants insist that any concurrent local action is impermissible, even if undertaken by a home rule unit.

This court has recognized that the Racing Acts are part of a "comprehensive statutory plan for the regulation of the horse racing industry in Illinois." (*People ex rel. Scott v. Illinois Racing Board,* 54 Ill. 2d 569, 577.) It is apparent that defendants have focused upon the regulatory character of that plan as the basis for their preemption argument. Defendants declare that the Racing Acts commit to the Racing Board "complete regulatory power" over the horse racing industry. Drawing analogies to the Environmental Protection Act (Ill. Rev. Stat. 1973, ch.

111½, par. 1001 *et seq.*) and the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1973, ch. 93, par. 201 *et seq.*), defendants contend that those acts, like the Racing Acts, "completely govern the fields they were designed to regulate." Defendants then conclude that this court has not hesitated to find preemption by the State where the General Assembly has enacted an all-inclusive program "to regulate a particular area."

We cannot accept defendants' argument. The power to regulate and the power to tax are separate and distinct powers. (*Rozner v. Korshak,* 55 Ill. 2d 430; *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willow-brook,* 63 Ill. 2d 400, 402.) Even if we assume, *arguendo,* that the existence of a comprehensive statutory regulatory scheme may serve, in a given instance, to preclude local regulatory efforts, it does not necessarily follow that the power to tax in that area would also be preempted.

More importantly, defendants underestimate the scope of the taxing power enjoyed by home rule units. As a home rule unit, plaintiff derives its powers from article VII, section 6, of the 1970 Constitution (Ill. Const. 1970, art. VII, sec. 6). That section reads, in pertinent part, as follows:

> "(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax; ***.
>
>       \*    \*    \*
>
> (g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax ***.
>
> (h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power ***."

We have consistently held that article VII, section 6(a), confers upon home rule units a broad taxing power. (*Mulligan v. Dunne,* 61 Ill. 2d 544; *Paper Supply Co. v.*

*City of Chicago,* 57 Ill. 2d 553; *City of Evanston v. County of Cook,* 53 Ill. 2d 312; *S. Bloom, Inc. v. Korshak,* 52 Ill. 2d 56.) As we declared in *Mulligan,* "[t]he framers of the 1970 Constitution considered the power to tax as essential to effective home rule and intended that power to be broad." 61 Ill. 2d 544, 548.

Our decision in *Mulligan v. Dunne* effectively refutes defendants' preemption argument. In *Mulligan,* we were called upon to judge the validity of a Cook County ordinance which levied a tax upon the retail sale of alcoholic beverages. There too it was asserted that extensive regulation and taxation of the industry had preempted home rule taxing powers. In addressing that argument, we first observed that the statute recognized local interest in liquor control by permitting local regulation and licensing. We also remarked that the statute did not express exclusivity with regard to liquor taxation. Consequently, the ordinance in question, which attempted no regulation of areas regulated by the statute, did not conflict with the statute. However, we also went on to stress that "even an exercise of a home-rule power under section 6(a) which actually conflicts with a statute enacted prior to the adoption of the 1970 Constitution is nonetheless valid unless the power is restricted by a constitutional provision or appropriate legislation enacted subsequent to the 1970 Constitution," citing various other decisions of this court. (61 Ill. 2d 544, 550.) In conclusion, we stated:

"Accordingly, since the General Assembly has not by a three-fifths majority chosen to limit the power of home-rule units to tax liquor, Cook County has not exceeded its home-rule power under section 6(a) by the enactment of its liquor tax ordinance." 61 Ill. 2d 544, 551.

In the instant case, defendants concede that the ordinance in question is "without any regulatory purpose whatsoever." Moreover, defendants do not contend that the Ordinance has the effect of regulating those areas now

regulated by the Racing Acts. Therefore, as to the preemption issue, *Mulligan* is, we judge, controlling. Since the General Assembly has not acted, pursuant to section 6(g), to limit or deny plaintiff's power to levy the tax imposed, plaintiff has not exceeded its taxing powers under section 6(a), and there has been no preemption by the State. To the extent that provisions in the Racing Acts purport to bar plaintiff from levying the tax in question, those provisions are of no effect.

What we have said thus far largely disposes of defendants' second, and closely related, argument. Defendants assert that the racing industry is statewide in nature, that the tax revenues derived from that industry were intended to exclusively benefit the State, and that "long standing state regulation, control and taxation of the racing industry" precludes horse racing from being considered a subject pertaining to Cicero's government and affairs. Our difficulty with this line of reasoning is that it essentially amounts to a restatement of defendants' preemption argument. However, defendants argue the two issues separately, so we will analyze them accordingly.

Plaintiff contends, and defendants do not dispute, that the power to tax is a power which pertains to the government and affairs of Cicero. Furthermore, defendants concede *arguendo* that the purpose for which the plaintiff's tax was levied is a purpose which pertains to plaintiff's government and affairs. Nevertheless, defendants insist that horse racing is not an activity pertaining to Cicero's government and affairs. We disagree. Defendants ignore horse racing's hybrid character as both an industry and an amusement. While horse racing is an industry heavily regulated by the State, it is likewise, in the context of this case, a local amusement being carried on within the corporate boundaries of Cicero. As previously stated, this case does not involve any exercise of a home rule unit's regulatory powers. We are confronted here solely with a taxing measure and, in that framework, we see no merit to

defendants' contention.

Defendants place chief reliance upon our decision in *Ampersand, Inc. v. Finley,* 61 Ill. 2d 537. In *Ampersand,* this court held invalid a Cook County ordinance directing the clerk of the circuit court to collect a $2 filing fee in all civil actions. The county sought to justify the fee as a tax which was intended for the support of the county's law library. In ruling against the validity of the ordinance, we rested our decision upon an interpretation of article VI of the 1970 Constitution, emphasizing:

> "\*\*\* Only one unified court system operating statewide is contemplated. Article VI of the 1970 Constitution does not contemplate *nor does it authorize* the exercise of any control over *or permit* the imposition of a burden on the judicial system by any local entity." (Emphasis added.) (61 Ill. 2d 537, 542.)

The filing fee at issue did constitute such a burden, for payment of the fee was made a condition precedent to exercise of the right to litigate in the courts.

*Ampersand* is clearly distinguishable from the instant case, as the fee at issue there created a burden upon an area committed exclusively to the State's concern by the Constitution itself. This was underscored in *Ampersand* when we concluded that "the dominant interest which the State has in the administration of justice *by virtue of article VI of the Constitution* 'precludes this subject from being considered a matter pertaining to home-rule government and affairs.' " (Emphasis added.) (61 Ill. 2d 537, 543.) Thus construed, *Ampersand* merely reflects a long-standing principle that governmental bodies must operate subject to constitutional restraints, a principle we have applied elsewhere in the home rule context. (See *Paper Supply Co. v. City of Chicago,* 57 Ill. 2d 553, 580; *Cummings v. Daley,* 58 Ill. 2d 1, 3-4.) As we observed in *Mulligan v. Dunne,* "an exercise of a home-rule power under section 6(a) \*\*\* is \*\*\* valid unless the power is

restricted *by a constitutional provision* or appropriate legislation enacted subsequent to the 1970 Constitution." (Emphasis added.) 61 Ill. 2d 544, 550.

It goes without saying that the Constitution recognizes no comparable interest by the State in the horse racing industry. For the foregoing reasons, we find that the power to tax horse racing is a power which pertains to the government and affairs of Cicero.

Defendants next allege that the ordinance in question imposes an unauthorized tax upon occupations, in contravention of article VII, section 6(e), of the Constitution, which provides:

> "A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." (Ill. Const. 1970, art. VII, sec. 6(e).)

In *Paper Supply Co. v. City of Chicago,* 57 Ill. 2d 553, 559-66, this court exhaustively reviewed the proceedings of the 1970 constitutional convention and determined that the drafters had not intended that the term "tax upon occupations" be defined any differently than this court had heretofore defined the term "occupation tax." We therefore held that article VII, section 6(e)(2), of the Constitution proscribed the imposition of a tax upon a "given occupation." (57 Ill. 2d 553, 566.) Applying that standard, we upheld a Chicago ordinance which levied a $3 per month tax upon each employer who engaged at least 15 individuals as commission merchants or full-time employees.

In the present case, section 5—35 of the Ordinance imposes a tax upon all amusements within the town of Cicero at the rate of 10 cents per person witnessing, participating or entering the grounds or enclosure of a place of amusement or entertainment. Section 5—34 defines "amusement" or "entertainment" as follows:

> "Any theatrical, dramatic, musical or spectacular per-

formance, flower, poultry or animal show, animal act, circus, rodeo, athletic contest, sport, game or similar exhibition for public entertainment, including without being limited to, boxing, wrestling, skating, dancing, swimming, horse racing, which shall include thoroughbred and harness racing, riding on animals or vehicles, baseball, basketball, softball, football, tennis, golf, hockey, track and field games."

Defendants attack the Ordinance as imposing a tax upon "given, described callings or occupations." Defendants then argue that the tax has not been authorized by the General Assembly, thereby rendering its imposition violative of article VII, section 6(e)(2), of the Constitution.

Although plaintiff has argued that enactment of the Ordinance was authorized by the General Assembly pursuant to section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—42—5), we need not reach that issue, for we do not believe that the tax in question can be fairly characterized as a tax upon given occupations. Since the duty to pay the tax is not predicated upon the generation of revenue, but instead depends upon the number of individuals witnessing or participating in the amusement, the Ordinance by its terms is not confined to those who are engaged in businesses for profit. In this respect, the tax in question differs from a tax upon a percentage of gross receipts.

Even if we were to read sections 5—34 and 5—35 of the Ordinance in conjunction with section 5—38, which states in part that "[i]t is unlawful for any person to produce, present or conduct any such amusements, for gain or profit, without payment of the tax," we still could not accept defendants' argument. One who produces, presents or conducts an amusement, even for gain or profit, is not necessarily engaged in the *occupation* of producing, presenting or conducting such an amusement. (*Cf. Johnson v. Daley,* 403 Ill. 338, 342; *Mahon v. Nudelman,* 377 Ill. 331, 340; *Reif v. Barrett,* 355 Ill. 104, 123.) The Ordinance includes within its scope a broad

array of activities, both participative and exhibitive, without regard to the occupational status of those presenting or conducting those activities. Consequently, the Ordinance is broader than that upheld in the *Paper Supply* case, since the employer's tax at issue there fell only upon those who employed certain individuals "in connection with [their] business ***." (57 Ill. 2d 553, 558.) Similarly, the Ordinance is broader than that featured in *Reif v. Barrett,* 355 Ill. 104, cited in *Paper Supply. Reif* dealt with the constitutionality of the Retailers' Occupation Tax Act, which imposes a tax upon "persons *engaged in the business* of selling tangible personal property ***." (Emphasis added.) 355 Ill. 104, 108.

We recognize that some of those who are taxed by the Ordinance may be said to be engaged in the occupation of presenting or conducting amusements. It is not sufficient, however, that the burden of the tax fall upon those engaged in occupations, as *Paper Supply* makes clear. Rather, the ordinance must be designed to impose, and in fact impose, a tax upon given occupations. We do not believe that this ordinance is so designed. As we stated in *Reif,* "an occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession." (355 Ill. 104, 109.) Defendants concede the absence of any regulatory purpose, and we conclude that the Ordinance is not otherwise designed to tax those engaged in "a given occupation, trade or profession."

Defendants rely heavily upon our decision in *Stiska v. City of Chicago,* 405 Ill. 374. It is true that, in *Stiska,* the amusement tax at issue was characterized as an occupation tax. However, *Stiska* involved a tax upon gross receipts from admissions fees and other charges and is therefore distinguishable, for reasons already outlined. Moreover, in the context of that case our remarks were *dicta,* and thus they are not in any event controlling here. *Stiska* preceded

the adoption of the 1970 Constitution, which requires that "[p]owers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, sec. 6(m).) Consequently, doubts should be resolved in favor of a broad interpretation of plaintiff's taxing power. See *Paper Supply Co. v. City of Chicago,* 57 Ill. 2d 553, 572.

Since the tax in question is not a tax upon occupations, we need not consider whether the Ordinance places the legal incidence of that tax upon defendants and others similarly situated.

Lastly, defendants challenge the tax as a license for revenue within the meaning of article VII, section 6(e)(2), of the Constitution. Defendants' argument is devoid of merit. "The phrase 'to license for revenue' describes those situations in which a governmental unit that did not have the power to tax attempted to raise revenue by the exercise of its police power." (*Rozner v. Korshak,* 55 Ill. 2d 430, 433.) This is not such a situation, as plaintiff did not exercise its police powers, but rather enacted a taxing measure that it was empowered to enact.

For the foregoing reasons, we hold that adoption of the ordinance in question was a valid exercise of plaintiff's home rule taxing powers. We find no impediment to application of the Ordinance to defendants. The judgment of the circuit court of Cook County is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

*Affirmed and remanded.*

MR. JUSTICE SCHAEFER, concurring:

I agree that the tax is valid, but I reach that conclusion by a different route. Under our prior decisions, this tax is a tax upon an occupation. (See *Stiska v. City of Chicago* (1950), 405 Ill. 374; *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1976), 63 Ill. 2d 400; see also *Metro-Goldwyn-Mayer, Inc. v. ABC-Great States, Inc.* (1972), 8 Ill. App. 3d 836, 838.) The impact

of the tax is upon the licensee, and the sanction for nonpayment of the tax is revocation of the license. The provision of the ordinance that "[t]he licensee may, if he desires, collect such amounts from each ticket holder, in addition to the amount or amounts charged for such ticket of admission" does not alter the nature of the tax.

But the fact that the tax is a tax upon occupations does not impair its validity, for this tax is one that the General Assembly has "by law" authorized any municipality—whether home rule or not—to impose. Section 11—42—5 of the Municipal Code provides:

"The corporate authorities of each municipality may license, tax, *** theatricals and other exhibitions, shows, and amusements ***." Ill, Rev. Stat. 1971, ch. 24, par. 11—42—5.

The only remaining question is whether the prohibitions contained in the "Racing Acts" referred to in the majority opinion precluded the imposition of this local amusement tax prior to January 1, 1976, when they were repealed. For the reasons stated in the majority opinion, I agree that they did not.

MR. JUSTICE KLUCZYNSKI, concurring in part and dissenting in part:

I concur with the majority opinion that the passage of Public Act 79—1185 authorizes the tax the plaintiff seeks to levy against the defendants. I must dissent, however, to the majority's determination that the admissions tax ordinance was a valid exercise of home rule taxing powers, and that it did not constitute an impermissible tax upon occupations, prior to the effective date of that act. I agree with the concurring opinion that the tax ordinance is a tax upon occupations, but I do not agree with the determination that the tax is one the General Assembly has "by law" authorized under the Municipal Code.

Section 6(a) of article VII of the 1970 Constitution provides in part:

"(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs* including *** the power *** to tax ***." (Emphasis added.)

In *Ampersand, Inc. v. Finley,* 61 Ill. 2d 537, 539-40, this court noted that "[t]he terms of [section 6(a)] are broad and imprecise and were purposely left without definition. [Citations.] It was the intention of the constitutional convention to refrain from writing into the Constitution what has been referred to as a 'laundry list' setting forth all areas to be designated as of statewide concern or all areas to be designated as being of local concern. *** It was acknowledged in the constitutional debates that by virtue of the general language of the grant and the qualifying phrase 'pertaining to its government and affairs' the right of a home rule unit to exercise any power will ultimately depend upon an interpretation by this court as to whether or not the power exercised is within the grant of section 6(a). [Citation.]" In explaining the intended limitation of this section, the local government committee stated in its report to the constitutional convention: "It is clear, however, that the powers of home-rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621.) To further aid in understanding this limitation, the committee set forth several examples of what are and what are not considered valid home rule powers. One pertinent example was:

"Home-Rule City adopts an ordinance limiting the rates that may be charged by the telephone company for local calls. Long standing state regulation of utility rates precludes this subject from being considered a matter pertaining to home-rule government and affairs." 7 Proceedings 1652.

I find the admissions tax ordinance, as applied to the horse racing industry, analogous to the above-quoted example. As this court stated in *People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.,* 56 Ill. 2d 210, 216, and *People ex rel. Scott v. Illinois Racing Board,* 54 Ill. 2d 569, 576, "A primary legislative purpose in the regulation of horse racing is the generation of income for the State." It was further observed in *Illinois Racing Board* that "[b]oth [the Horse Racing and the Harness Racing] Acts are part of a comprehensive statutory plan for the regulation of the horse racing industry in Illinois." (54 Ill. 2d 569, 577.) Under those acts, no governmental body, other than the State, possesses the authority to issue a racing license or to impose any other type of direct control over racing. The long-standing State regulation of horse racing, starting in 1927 (Cahill's Ill. Rev. Stat. 1927, ch. 38, par. 316(1) *et seq.*), and the dominant interest the State has in the revenue derived from this industry, precludes it from being considered a subject pertaining to the government and affairs of Cicero.

The majority opinion attempts to distinguish the present case by recognizing the "hybrid character" of horse racing as both an industry and an amusement. It notes, in regard to the former, that it is heavily regulated by the State, and, in regard to the latter, that it is an activity carried on within the corporate boundaries of Cicero. Based on this distinction, the opinion concludes that plaintiff may levy its admissions tax.

I do not find this distinction controlling. The majority opinion, in effect, recognizes in horse racing both a State and a local interest. The existence of some local interest, however, does not provide authority for intrusions of home rule powers into areas of dominant State interest, such as here, or into areas which are generally recognized as falling within the competence of State authorities. In *City of Des Plaines v. Chicago and North Western Ry. Co.,* 65 Ill. 2d 1, which involved the question of a home rule municipality's power to regulate noise

pollution, this court recognized the local interest in the regulation of noise pollution emissions, but found that it was a matter recognized as falling within the competence of State authorities. The reasoning expressed by this court in determining that the regulation of noise pollution is not a matter pertaining to the government and affairs of a home rule municipality is equally applicable and valid to the present case, and should be controlling.

In pertinent part, section 6(e)(2) of article VII provides:

> "(e) A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations."

"[A]n occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession." (*Reif v. Barrett,* 355 Ill. 104, 109.) Throughout its brief, plaintiff has asserted that the admissions tax is a tax imposed for the privilege of conducting an "amusement" in Cicero. Even without plaintiff's statement, it is clear that the tax comes within the court's definition of a tax upon occupations. Plaintiff, however, vigorously attempts to distinguish its tax by pointing out that it applies to "all amusements" and is not imposed upon a "given occupation." Such a distinction is without merit. While the licensees of this tax may be involved in such various activities as presenting horse racing meetings or theatrical performances or athletic contests, they are all engaged in the general occupation of furnishing amusements to the public, and are subject to the admissions tax because of that occupation. Plaintiff's contention that the tax embraces amusements which are not occupations in the traditional sense, such as a poultry show, animal act or flower show, is equally without merit. It is not the show or the act which is liable for the tax, but rather the person or

corporation presenting the amusement. Notably, in the present action, plaintiff did not seek a monetary judgment against a harness racing meeting, but against the corporation which conducted the meeting.

Plaintiff argues that the admissions tax ordinance does not impose an occupation tax because the "true incidence" of the tax falls upon the patrons of the particular amusement. In support of this position, it points to the provision in section 5—35 of the ordinance which specifically permits the licensees to collect the amount of the tax from the ticket holders. Plaintiff's reasoning, however, is contrary to this court's previous decisions in *National Bank of Hyde Park v. Isaacs*, 27 Ill. 2d 205, 207, and *First National Bank of Maywood v. Jones*, 48 Ill. 2d 282, 288, wherein we stated that "the custom of passing the [tax] burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls." See also *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56, 63.

The admissions tax ordinance placed the legal incidence of the tax upon the licensees, and whether or not, as a practical matter, the economic burden is shifted to the patrons, as the ordinance would permit, is not controlling. The ordinance is unlike the cigarette tax ordinance considered in *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56, or the liquor tax ordinance in *Mulligan v. Dunne*, 61 Ill. 2d 544. The tax ordinances challenged in those cases specifically provided, unlike the present ordinance, that the burden of the tax was to be borne by the consumer. Since the legal incidence of the tax was clearly placed upon the consumers, the respective ordinances did not impose a tax upon occupations.

Plaintiff argues that it possesses authority to impose the admissions tax under section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—42—5) and section 9 of the Transition Schedule of the 1970 Constitution. Section 11—42—5, which was in effect

at the time the admissions tax ordinance was enacted, provides:

> "The corporate authorities of each municipality may license, tax *** theatricals and other exhibitions, shows, and amusements and may license, tax, and regulate all places for *** amusement."

Section 9 of the Transition Schedule states, in pertinent part:

> "All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they shall expire by their own limitation or shall be altered or repealed pursuant to this Constitution."

Plaintiff reasons that since local municipalities have long held the power to tax amusements under section 11—42—5 and this statutory authority is not contrary to the 1970 Constitution, section 9 of the Transition Schedule provides that the statute remains in force.

The concurring opinion concludes that, although the admissions tax ordinance is a tax upon occupations, it is valid, because the General Assembly has "by law" authorized municipalities to impose such under section 11—42—5 of the Municipal Code. The words "by law" are, apparently, a reference to section 6(e) of article VII, which states: "A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to *** impose taxes *** upon occupations." Section 11—42—5, however, was enacted by the General Assembly prior to the 1970 Constitution (see Laws of 1961, at 576), and it cannot provide the legislative authorization required by section 6(e) to overcome the constitutional prohibition contained in that section. Section 11—42—5 of the Municipal Code cannot remain in force under the provisions of section 9 of the Transition Schedule, because it is contrary to the specific prohibition of section 6(e)(2), which precludes home rule municipalities from imposing a tax upon occupations. The question of whether non-home-rule municipalities may impose such a tax under section 11—42—5 is not an issue in the appeal.

Accordingly, for the above-stated reasons, I would hold that prior to the General Assembly's authorization in Public Act 79—1185 the admissions tax ordinance was an invalid exercise of home rule powers.