THE CHICAGO PARK DISTRICT, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—450

---

Opinion filed August 29, 1984.

216

RIZZI, P.J., dissenting.

Rick Halprin, of Chicago, for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Philip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Chicago Park District (Park District) filed this action against defendant city of Chicago (the city), seeking a declaratory judgment that the Chicago boat-mooring tax was unconstitutional. On the Park District's motion for a temporary restraining order and preliminary injunction to prevent the city from collecting the tax, the trial court ruled that the Park District did not have standing to sue, and did not demonstrate irreparable harm or a likelihood of success on the merits. Following the denial of its motion, the Park District brings this interlocutory appeal.

In December 1983, the Chicago city council enacted chapter 200.8, the Chicago boat-mooring tax, requiring all persons who moor or dock watercraft in any body of water within the city's corporate limits to

pay a tax to the city. The tax, at a rate of 50% of the mooring or docking fee, is due on March 1 of each year for permits issued that year. The Park District controls eight harbor facilities providing moorings for approximately 7,200 boats. Each person issued a mooring permit by the Park District must pay the boat-mooring tax directly to the city. Additional moorings within the city limits, not controlled by the Park District, are also covered by the boat-mooring tax.

Following the adoption of the tax, the Park District filed suit alleging that the city's ordinance is an unconstitutional interference with its grant of authority from the State to provide recreational harbors at a reasonable fee. At a hearing on February 17, 1984, the trial court denied the Park District's motion for a temporary restraining order. On February 24, 1984, the court denied the Park District's motion for a preliminary injunction.

On appeal, the Park District contends that the trial court erred in denying its motion for a preliminary injunction because the State statutory scheme regulating recreational harbors preempts the city from enacting its own legislation under its home rule authority and the State legislation removes recreational harbors from the government and affairs of the city. The Park District also argues that it has standing to sue, and that the tax is in effect a regulatory measure which impermissibly burdens the Park District.

■ Initially, the city maintains that the appeal is moot because the trial court, on its own motion, has enjoined the city from collecting the mooring tax. We find, however, that since the preliminary injunction may be dissolved at any time before a final determination on the merits of the Park District's cause of action, the appeal of the denial of the preliminary injunction is not moot.

■■ We next address the trial court's finding that the Park District did not have standing to sue. Section 2–701 of the Illinois Code of Civil Procedure allows the court to make a binding declaration of a party's rights where an actual controversy exists. (Ill. Rev. Stat. 1983, ch. 110, par. 2–701; *Exchange National Bank v. County of Cook* (1955), 6 Ill. 2d 419, 129 N.E.2d 1.) A plaintiff has standing where he has a real interest in the subject matter of the controversy. (*City of West Chicago v. County of Du Page* (1979), 67 Ill. App. 3d 924, 385 N.E.2d 826.) The plaintiff must allege a direct injury to his rights and not merely that he will suffer in some indefinite way. *Dolnick v. Redmond* (1972), 4 Ill. App. 3d 1037, 283 N.E.2d 113.

■ In its complaint, the Park District alleges it has plenary authority over recreational harbors; that it has issued revenue bonds pursuant to its authority; that the boat-mooring tax interferes with its

bond contracts and regulatory functions; and that the tax will cause an irreplaceable loss of boaters affecting its revenues. These allegations demonstrate a real interest in the subject matter of the controversy. Although the Park District is not required to pay or collect the tax, the impact of the tax on mooring benefit holders directly injures the District and its revenue planning. The Park District has standing to challenge the tax.

The trial court also found that the Park District had not shown an irreparable injury or the probability of success on the merits to warrant a preliminary injunction.

■ A preliminary injunction may be granted where the plaintiff demonstrates that there is no adequate remedy at law and that he will be irreparably harmed if the injunction is not granted; that the threatened harm to him is immediate, certain and great while the inconvenience to the opposing party is small; that he has a reasonable likelihood of success on the merits; and that granting the preliminary injunction will not have an injurious effect on the general public. (*McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420; *Professional Business Management, Inc. v. Clark* (1967), 83 Ill. App. 2d 236, 227 N.E.2d 371.) Our review is limited to whether the trial court abused its discretion in denying the requested injunction. *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536; *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125.

■ In view of our belief that the Park District has not shown probable success on the issue of the constitutionality of the boat-mooring tax, we deem it unnecessary to consider the Park District's claim that it has demonstrated irreparable harm.

While recognizing the city's home rule power to tax, the Park District maintains that State law preempts the field of recreational harbors preventing the city from imposing its mooring tax. The Park District argues that the legislature has expressed an exclusive State interest in recreational harbors through comprehensive legislation and that such action by the State removes recreational harbors from the government and affairs of the city.

■ Article VII, section 6(a), of the Illinois Constitution grants to home rule units the power to tax in those areas pertaining to its government and affairs. (Ill. Const. 1970, art. VII, sec. 6(a).) The taxing power is to be construed liberally (Ill. Const. 1970, art. VII, sec. 6(m); *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6), but is not without limitation. The General Assembly may deny or limit a home rule unit's power to tax by a three-fifths vote of its members. Ill.

Const. 1970, art. VII, sec. 6(g); *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6; compare *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Com.* (1982), 104 Ill. App. 3d 817, 433 N.E.2d 329.

■ The Park District, relying on its grant of authority to build, finance and regulate harbors, urges that the city is specifically precluded from any governmental participation in recreational harbors. A similar argument was presented to our supreme court in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, and *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118. In *Mulligan*, plaintiffs contested the Cook County liquor tax, arguing that the State had preempted the area by its extensive regulation of the liquor industry. Similarly, plaintiffs in *Town of Cicero* argued that extensive regulation by the State in the field of horse racing precluded the municipality from imposing an amusement tax on horse racing events. In both cases the supreme court recognized a distinction between the power to regulate and the power to tax and held that extensive regulation did not preempt the power to tax. (See *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1976), 63 Ill. 2d 400, 349 N.E.2d 3.) Likewise, we hold in the present case that extensive regulation did not preclude the city from imposing a tax.

■ We also reject the Park District's contention that recreational harbors are not within the government and affairs of the city. The Park District refers us to only one case in which a home rule unit tax was struck down. In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15, the court invalidated a Cook County law library tax assessed against all parties in civil court actions. Central to that decision was the pervasive State interest in the courts mandated by the constitution. In construing *Ampersand* in a later case, the court said, "*Ampersand* merely reflects a longstanding principle that governmental bodies must operate subject to constitutional restraints ***." *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 20, 338 N.E.2d 15; see *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399 (home rule unit may not impose tax on school district where State has constitutional power over schools).

The Park District also points to two statutes in its attempt to establish a pervasive State interest which removes recreational harbors from the government and affairs of the city. Section 26 of "An Act in relation to the regulation of the rivers, lakes and streams of the State of Illinois" provides that nothing in the Act shall be construed to impair the rights of Illinois citizens to enjoy such bodies of water. (Ill.

Rev. Stat. 1983, ch. 19, par. 73.) Section 26.3(g) of "An Act in relation to *** the Chicago Park District" authorizes the Park District to establish and collect fees for all harbor facilities. (Ill. Rev. Stat. 1983, ch. 105, par. 333.23n(g).) However, neither of these provisions reflect a statewide constitutional interest in recreational harbors, such that the city may not impose its home rule power to tax.

We find no merit in the Park District's argument that the mooring tax is not a tax but a usurpation of its authority to set fees for recreational harbors. The mooring tax in no way regulates access to recreational harbors, but appears to be strictly a revenue measure. While every tax on an activity increases the ultimate cost of that activity to the consumer, this factor does not change the tax from a revenue measure to a regulatory measure.

Relying on *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399, the Park District urges us to find that the 50% mooring tax imposes an unreasonable burden upon it. According to the Park District, the supreme court upheld Peoria's 2% liquor and food sales tax because it was incidental, while this court should find the mooring tax invalid because a 50% tax is not incidental. From our reading of the *City of Peoria* case, the court was referring to the burden of collecting the tax, not to the amount of the tax. In the case before us, the city has not imposed any burden on the Park District to collect its mooring tax.

We hold that the trial court did not abuse its discretion in denying the Park District's motion for a preliminary injunction since the Park District did not demonstrate a reasonable likelihood of success on the merits.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, J., concurs.

PRESIDING JUSTICE RIZZI, dissenting:

I concur in the majority opinion to the extent that it holds that the appeal is not moot, that the Park District has standing to sue, and that the city, as a home rule unit, has the power to impose the tax at issue here. However, I disagree with the conclusion of the majority that the Park District has failed to show that it is entitled to the issuance of a preliminary injunction. Accordingly, I would reverse the order of the trial court denying the issuance of a preliminary injunction,

and remand the case for the entry of a preliminary injunction and further proceedings to determine whether a declaratory judgment that the Chicago boat-mooring tax is unconstitutional should be entered in favor of the Park District.

In order to obtain a preliminary injunction, the movant must establish irreparable injury and the likelihood of success on the merits. Likelihood of success on the merits does not mean a showing which will in all events warrant relief in the final hearing. Rather, it means that the movant must demonstrate that he is probably entitled to the relief prayed for if the proof should sustain his allegations. In addition, the movant must establish that the granting of the preliminary relief outweighs any possible injury which the opposing party might suffer by its issuance. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 287, 448 N.E.2d 947, 949; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 217, 363 N.E.2d 6, 9.) Finally, there must be no adequate remedy at law. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 834, 458 N.E.2d 998, 1001.

I believe that the Park District has adequately demonstrated that it will be irreparably harmed by the city's boat-mooring tax, which imposes upon any watercraft moored or docked in the Park District's harbor system a tax equal to 50% of the fee charged by the Park District. Although the tax is imposed on those who dock and moor their vessels and not on the Park District itself, I believe that the record sufficiently establishes that the 50% tax will unconstitutionally usurp the Park District's fee authority and unreasonably interfere with its statutory obligation to provide harbors for the recreational use and benefit of the public. See Ill. Rev. Stat. 1983, ch. 105, par. 333.23m.

The Chicago Park District is a unit of local government (Ill. Const. 1970, art. VII, sec. 1), and it has only those powers granted by law (Ill. Const. 1970, art. VII, sec. 8). The powers are enumerated in that portion of the Park District Code which specifically concerns the Chicago Park District (Ill. Rev. Stat. 1983, ch. 105, par. 333.1 *et seq.*). In particular, sections 26.1 through 26.10 (Ill. Rev. Stat. 1983, ch. 105, pars. 333.23l through 333.23u) relate to the Park District's powers in regard to harbors for recreational purposes. Among the general powers granted to the Park District are the rights and powers to furnish complete harbor facilities and services, including mooring and docking facilities (Ill. Rev. Stat. 1983, ch. 105, par. 333.23n(a)) and to establish and collect fees for all facilities and services (Ill. Rev. Stat. 1983, ch. 105, par. 333.23n(g); see *MacNeil v. Chicago Park District* (1948), 401 Ill. 556, 82 N.E.2d 452).

The Park District is authorized to borrow money by issuing bonds in anticipation of its revenue from its harbors for recreational purposes and related facilities. The bonds must be authorized by ordinance. (Ill. Rev. Stat. 1983, ch. 105, par. 333.23q.) This section further provides that:

> "No holder of any bond issued under this law shall ever have the right to compel any exercise of taxing power of the Chicago Park District to pay the bond or interest thereon. Each bond issued under this section is payable solely from the revenue derived from the operation of the harbor and facilities. The bond shall not in any event constitute a debt of the Chicago Park District within any statutory or constitutional limitations, and this shall be plainly stated on the face of each bond."

In adopting the ordinance necessary for the issuance of bonds, the Park District may provide for covenants which shall be part .of the contract between the Park District and the bondholders. In general, the covenants pertain to obligations to be undertaken by the Park District "as may be deemed necessary or desirable to assure a successful and profitable operation of the harbor and facilities, and prompt payment of the principal of and interest upon the bonds ***." Ill. Rev. Stat. 1983, ch. 105, par. 333.23r(l).

The statutory scheme further provides that when the revenue bonds are issued, "the revenues received from the operation of the harbor or facilities shall be deposited in a separate fund which shall be used only in paying the principal and interest of these revenue bonds and reserves therefor and the cost of maintenance, operation and depreciation of the harbor and facilities ***." (Ill. Rev. Stat. 1983, ch. 105, par. 333.23s.) Any revenues in excess of those necessary to fulfill these requirements "may be used for rehabilitation of the harbor and facilities, necessary reconstructions and expansion, construction of new facilities or for retirement of any outstanding bonds issued for harbor purposes." (Ill. Rev. Stat. 1983, ch. 105, par. 333.23s.) Revenues remaining after all such bonds have been paid may be transferred to the Park District's general corporate fund. (Ill. Rev. Stat. 1983, ch. 105, par. 333.23s.) Finally, the Park District may sell or pledge its revenue bonds to secure grants or loans from the Federal government or its agencies. Ill. Rev. Stat. 1983, ch. 105, par. 333.23t.

It is within this narrow statutory framework that the Park District must seek to secure its revenues for its recreational harbors. For this reason, I believe that taxes imposed by the city must be reasonable so they do not interfere with the Park District's statutory right, granted pursuant to the constitution, to generate revenue. In my

opinion, the Park District has adequately shown that it will be irreparably harmed in its fund raising abilities by the city's 50% boat-mooring tax. As the Park District argues, the tax has the effect of limiting the fees that it can charge boat owners who moor or dock their boats in the Park District's recreational harbors. Each fee increase approved by the Park District as being an appropriate charge for its facilities is automatically increased by 50% pursuant to the tax. Thus, as the Park District states, if it decides that "this unanticipated acceleration of [its] fee schedule is too substantial of a burden on the public's right to enjoyment of the waters, [one of its] only alternative[s] would be to reduce the base fee ***" to an amount that would compensate for the 50% tax increase, but this in turn would reduce the Park District's revenue.

Alternatively, the Park District contends, if it determines that a reduction in its fees is not feasible, then the effect of the city's 50% tax will be to inhibit the Park District's ability to raise funds through the issuance of bonds. The likely result of the boat-mooring tax will be that boat owners will no longer seek to moor or dock their vessels in Park District harbors. In this regard, it should be pointed out that it is the policy of the Park District to grant a full refund of payments made for mooring fees if it receives the request prior to May 15 and to reimburse 50% of the fee paid if the request for a refund is made between May 15 and June 30. Moreover, according to the Park District, the waiting list for mooring spots has already been significantly reduced by the construction of additional harbor facilities. Absent a substantial waiting list, potential bondholders are not likely to be attracted, since the bonds are issued on the basis of anticipated revenues of a harbor and its facilities. Thus, if it appears that harbors may not be utilized to the fullest extent possible, the Park District's potential bond market may evaporate, especially since the bonds do not constitute a debt of the Park District (Ill. Rev. Stat. 1983, ch. 105, par. 333.23q).

In addition, I believe that the Park District has adequately demonstrated for the purpose of the issuance of a preliminary injunction that the city's 50% tax is so oppressive that it unreasonably interferes with the Park District's statutory authority to maintain and operate harbors for the recreational use and benefit of the public. The 50% tax may well serve to eliminate from the Park District's harbors those boat owners who have channeled limited discretionary income into the purchase of a pleasure boat but who will no longer be able to afford the exorbitant cost of mooring or docking. Plainly, the legislature did not intend that the Park District harbors become solely the province

of the wealthy.

While the city, like the Park District, is a unit of local government (Ill. Const. 1970, art. VII, sec. 1), the city is also a home rule unit (Ill. Const. 1970, art. VII, sec. 6). As such, it is imbued with extensive powers, including a broad revenue-raising power. (Ill. Const. 1970, art. VII, sec. 6; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 572, 317 N.E.2d 3, 12.) I do not believe, however, that the city can run rampant with its taxing power so as to encroach upon the more restricted fund raising avenues available by statute to another coordinate unit of local government or to unreasonably interfere with the function of another coordinate unit of local government. Accordingly, I can only conclude that the Park District has adequately alleged that the burden imposed on it by the city's 50% boat-mooring tax is not merely incidental (see *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 477, 394 N.E.2d 399, 403) and that the tax impermissibly frustrates the statutory rights and powers granted to the Park District by the legislature pursuant to the constitution.

For all of the above stated reasons, I would find that the Park District has sufficiently established that it will be irreparably harmed if the preliminary injunction is not issued and that it has a likelihood of success on the merits in the declaratory judgment action. As for the remaining two prerequisites for the issuance of a preliminary injunction, it is clear that both have been met. The lack of an adequate legal remedy is evident from the fact that the 50% tax will not only affect potential bond sales but will also affect the Park District in regard to its obligations to the public to provide and maintain recreational harbors. Clearly, this is a situation where the injury cannot be measured by pecuniary standards. (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 834, 458 N.E.2d 998, 1001.) Regarding the last requirement, the Park District has sufficiently demonstrated that the granting of the preliminary relief outweighs any possible injury which the city may suffer by its issuance. No harm is accruing to the city other than that which would be inherent whenever the assessment or collection of any tax is enjoined.

Although the decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, there must be a sufficient showing to sustain the order of the trial court granting or denying the relief sought. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 287, 448 N.E.2d 947, 949.) I do not believe that the record before us presents a sufficient basis on which to sustain the order of the trial court denying the relief sought. Rather,

the Park District has sufficiently shown that the 50% tax will unconstitutionally encroach upon the Park District's limited fund-raising abilities and unreasonably interfere with its statutory responsibility for providing recreational harbors for the use and benefit of the public. I would therefore reverse the order of the trial court and remand the case with directions to grant the preliminary injunction sought by the Park District, and for further proceedings to determine whether a declaratory judgment declaring the Chicago boat-mooring tax unconstitutional should be entered in favor of the Park District.