THE PEOPLE *ex rel.* JAMES EDGAR, Secretary of State, *et al.*, Plaintiffs-Appellees, *v.* JAMES HAROLD MILLER *et al.,* Defendants-Appellants.

Fourth District   No. 4—82—0309

Opinion filed November 4, 1982.—Rehearing denied December 13, 1982.

Kristen H. Fischer and Susan A. Stratman, both of Champaign, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (Mark S. Killion, Assistant Attorney General, of counsel), for appellees.

JUSTICE MILLS delivered the opinion of the court:

A "Blue Sky Law" case.

Miller and Cooper were enjoined from illegally selling securities and their bank accounts were frozen.

We affirm.

Pursuant to the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.1 through 137.19), the Secretary of State filed verified complaints for statutory injunction and for a temporary restraining order. The trial court issued an *ex parte* order restraining defendants—until further order of the court—from:

> "Engaging in acts related to the selling or offering for sale of securities alleged to be tax-free municipal bonds or any other security in the State of Illinois except in compliance with the [Illinois Securities Law of 1953] as amended; [and from] removing any funds from any bank account, certificates of deposit, repurchase agreements or any other like account held in the name of the Defendants or for which the Defendants are named signatories in the State of Illinois."

The matter was continued to May 12, 1982, for hearing on the request for injunction.

Defendants were served with the complaint and the temporary restraining order on May 10, 1982. They did not file any responsive pleading, but did appear and participate in the May 12 evidentiary hearing.

Testimony at the hearing was exhaustive, but may be summarized. It was established that defendants Cooper and Miller were not registered under the Illinois Securities Law of 1953 as issuers, dealers or salespersons of securities or as investment advisors, and that Continental National Associates was not registered to issue any type of security in this State and did not employ any salespersons or dealers

registered to sell such securities.

Blanche Lindgren testified at the hearing that she was 76 years old and had resided with her brother, Clarence, all her life. Sometime in the late summer or early fall of 1981, she and Clarence met defendants. They met several times over the next several months and a friendship of sorts developed. According to Lindgren, defendant Miller had held himself out as having some expertise in estate planning and when she voiced concern over planning for one of her relatives, Miller filled out financial statements and confidential information forms which she and her brother signed. These were admitted into evidence. Then, on November 4, 1981, Miss Lindgren gave Miller $88,791.16 because Miller had stated that he could get her "a lot better money on your investment." The money was to be invested in tax-free bonds—which the witness also referred to as tax-free municipal bonds, tax-exempt bonds, interest-exempt bonds or simply bonds.

Lindgren testified that she received a receipt from Miller for this money and later received some documents in a plastic envelope. She did not inspect the documents when she received them and no one explained them to her.

In January, Lindgren gave Miller additional funds totaling $30,000 for further investment in tax-free bonds. She never received any note or other documents in exchange for this money until after April 26, 1982.

Lindgren indicated that she had filled out an application for insurance and had given Miller a check for the premium, but that no insurance coverage was issued and her check had been returned. She also related that she and her brother made a $6,000 personal loan to defendant Miller and had received a promissory note bearing a stated interest rate of 10% in return.

Lindgren testified that on April 26, 1982, after conversing with her nephew, she became suspicious and inspected the documents she had received from defendants. The November 4 documents turned out to be promissory notes obligating defendants to repay her the $88,000, at a 13.5% rate of interest, 60 months after the date of the note.

Defendants' testimony is in direct conflict with that of Miss Lindgren. They testified that they are engaged in the business of selling insurance and do some estate planning involving life insurance. Further, they testified that the transactions with the Lindgrens were always understood by all concerned to be personal loans. Miller testified that he personally delivered the November 4 notes to the Lindgrens and discussed the terms with them at that time.

Both Cooper and Miller testified that they executed a promissory note for the $30,000 they received from Blanche Lindgren in January, but that they did not know of its whereabouts. When they learned on April 26 that Blanche Lindgren had not received the note, they executed a duplicate and instructed their counsel to deliver the same.

Defendants also denied ever telling the Lindgrens that they were investing in tax-free bonds, bonds or any security.

Defendants further testified that the money received by them from the Lindgrens had been expended; that they intended to repay the money in accordance with the terms of the notes; and that the temporary restraining order had virtually made it impossible for them to carry on their business as insurance agents.

On May 12, 1982, the court issued a preliminary injunction identical in its terms to the temporary restraining order. Defendants contend that both the temporary restraining order and the preliminary injunction were improperly entered.

## I

The first question which must be addressed by this court is the appealability of the temporary restraining order. We acknowledge the rule that the question of whether a temporary restraining order was properly granted is not moot simply because the order expires by its own terms long before an appeal may be heard. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) However, mootness is not the issue before this court. Rather, we are faced with a jurisdictional question. Compare *Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309 (a question is moot and a court will refuse to hear a case—even though it has jurisdiction—where it cannot grant effective relief).

Appeal of a temporary restraining order is permitted by Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)). However, where, as here, an interlocutory order was entered *ex parte,* Rule 307(b) provides that the party seeking to appeal must first file a motion to vacate the order. 87 Ill. 2d R. 307(b).

The purpose of this rule is to preclude appeals where there has been only partial or one-sided consideration below. (*Bohn.*) Thus, it is really the denial of the motion to vacate which is the appealable order, and not the temporary restraining order itself. *Panduit Corp. v. All States Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316.

The requirements of Rule 307(b) are not dispensed with by section 11(K) of the Illinois Securities Law of 1953. Section 11(K) provides

that either party to a suit for injunction to enforce the act "shall have the right to prosecute an appeal from the order of judgment of the Court." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.11(K).) As the right is not conditioned on filing a motion to vacate, defendants would have this court hold that Rule 307(b) does not preclude review.

■ Defendants' argument must be rejected because it is the supreme court—not the legislature—which is empowered to make rules for interlocutory appeals to the appellate court. (Ill. Const. 1970, art. VI, sec. 6.) We decline to adopt an unconstitutional interpretation of section 11(K) and hold it to be consistent with Rule 307(b). (See *People v. Phipps* (1979), 79 Ill. App. 3d 532, 398 N.E.2d 650, *rev'd on other grounds* (1980), 83 Ill. 2d 87, 413 N.E.2d 1277 (holding section 10(b) of the Mental Health and Developmental Disabilities Confidentiality Act unconstitutional as an attempt by the legislature to usurp the power of the judiciary).) No motion to vacate was filed in this case, so we decline to consider the propriety of the temporary restraining order.

Even if the question was properly before the court, it is subsumed by the question of the propriety of the issuance of the preliminary injunction. See *People ex rel. Fahner v. Steel Container Corp.* (1981), 102 Ill. App. 3d 369, 430 N.E.2d 68.

We now turn to that issue.

## II

The first question which arises is whether this court may consider the sufficiency of the Secretary's complaint for the first time on appeal. Both parties agree, and it is a well-settled rule, that when a complaint totally fails to state a cause of action, it may be challenged at any time. *Larkin v. Howlett* (1974), 19 Ill. App. 3d 343, 311 N.E.2d 367.

■ Secondly, we must consider whether the propriety of the preliminary injunction is to be judged solely on the basis of the Secretary's complaint or whether we may also consider evidence adduced at the May 12 hearing. It is error to hold a hearing and consider evidence on a complaint for preliminary injunction where defendant has not answered. (*Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 411 N.E.2d 326.) However, defendants' participation in the hearing below waived their right to object to evidence being considered in deciding whether to grant the preliminary injunction. *Kurle.*

This brings us to the major question in this case—what must the Secretary show to state a good cause of action for a preliminary in-

junction? Traditionally, the equitable remedy of injunction is only granted where plaintiff shows: (1) he has a right which needs protection; (2) he will suffer irreparable harm without the protection; (3) he has no adequate remedy at law; and (4) he is likely to succeed on the merits. (*Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747.) Additionally, a plaintiff must show that he will suffer greater harm without the injunction than a defendant will suffer if it is issued. See *Steel Container Corp.*

■ However, when an injunction is sought pursuant to a statute, the traditional requirements ae dispensed with and the requirements of the statute are controlling. (*People v. Keeven* (1979), 68 Ill. App. 3d 91, 385 N.E.2d 804 (involving a suit to enjoin defendants from violating regulations promulgated under the Illinois Environmental Protection Act). See also *People ex rel. Carpentier v. Goers* (1960), 20 Ill. 2d 272, 170 N.E.2d 159 (statutory authorization of injunctive relief "negatived" the traditional requirements for issuance of an injunction).) The logic behind the rule is that since the legislature has seen fit to enact legislation, it may be presumed that there is a need for injunctive remedy.

■ We reject defendants' argument that sections 11(K) and 13(F) of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.11(K), 137.13(F))—which authorized circuit courts to issue injunctions "upon a proper showing"—impose the traditional requirements for an injunction. If the phrase is a recognition of the judicial requirements for issuance of an injunction, it is merely surplusage, as courts can issue injunctions without any direction from the legislature. A much more logical construction, which we adopt, is that the phrase refers back to the previous sentence—which speaks of persons engaging or about to engage in violations of the Illinois Securities Law of 1953. The phrase thus avoids redundancy.

We also find *People ex rel. Fahner v. Steel Container Corp.* (1981), 102 Ill. App. 3d 369, 430 N.E.2d 68, distinguishable. That case involved a suit by the Attorney General under section 2 of "An Act in relation to the prevention and abatement of air, land and water pollution" (Ill. Rev. Stat. 1981, ch. 14, par. 12) to prohibit defendant from transferring any of its assets. That act is not a regulatory scheme like the Environmental Protection Act or the Illinois Securities Law of 1953 and states no pleading requirements. Thus, the logic of *Keeven* did not apply and the State was required to plead and prove the traditional elements to obtain an injunction.

## III

Given that the Secretary need not show irreparable harm or an inadequate remedy at law, the question remains whether a violation of the Illinois Securities Law of 1953 has been stated. The facts pleaded and the evidence adduced show that defendants offered to sell bonds (defined as securities in section 2.1 of the act (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—1)) and that neither defendants nor their partnership was licensed to sell securities. This is a violation of section 12(A) of the act. Ill. Rev. Stat. 1981, ch.121½, par. 137.12(A).

Additionally, the facts support findings that defendants had violated sections 12(F), (I), and (J) of the act in that their actions were fraudulent, deceptive, and manipulative. (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.12(F), (I), (J).) That no security actually changed hands is of no consequence. "Sale" of a security includes an attempted sale, an offer to sell, or solicitation of an offer to buy—be it direct or indirect. Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—5.

■ Thus, a violation of the Illinois Securities Law of 1953 has clearly been demonstrated. Since that is all that is necessary to support issuance of a preliminary injunction, the injunction was properly issued.

## IV

The final issue before the court concerns the scope of the injunction. The purpose of an injunction is to preserve the status quo, not to punish a defendant. (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.) *Sager* defines status quo as the "last, actual, peaceable uncontested status which preceded the pending controversy." (98 Ill. App. 3d 758, 761, 424 N.E.2d 719, 722.) It is improper to destroy the status quo. *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166.

The first portion of the preliminary injunction here clearly does not destroy the status quo, it merely enjoins defendants from doing something which is illegal. What defendants complain of is the second portion of the order, which freezes their bank accounts.

■ It is true that defendants' bank accounts were not frozen prior to the time they first met the Lindgrens. However, that is not enough to make the injunction overbroad. If all the Secretary of State could do to enforce the Illinois Securities Law of 1953 is to enjoin people from violating it, the injunction would be a rather limited weapon. Freezing the bank accounts of violators appears to be an effective way of stopping violations of the act. Defendants have suggested no way in which the injunction could have been more precisely

tailored, and none is apparent to this court.

Finding no merit in any of defendants' contentions, we affirm.

Affirmed.

WEBBER and TRAPP, JJ., concur.