(No. 65386.—

CHICAGO HEALTH CLUBS, INC., *et al.*, Appellants,
v. RONALD PICUR, Comptroller of the City of Chi-
cago, *et al.*, Appellees.

*Opinion filed June 20, 1988.—Rehearing
denied October 3, 1988.*

2

Michael L. Sklar, Frances H. Krasnow, Robert Radasevich and William J. Popper, of Neal, Gerber, Eisenberg & Lurie, and William Goldberg, of Holleb & Coff, all of Chicago, for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch, Julie Elena Brown, Lynn K. Mitchell and Joseph A. Moore, of counsel), for appellees.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiffs, Chicago Health Clubs, Inc., Chicago Health Clubs Fair Lady, Inc., Exercise Centers of Chicago, Inc., River City Fitness Center, Inc., Downtown Court Club, Inc., Pro's Gym and Nautilus, Inc., Lakeshore Centre Management Company d/b/a Lakeshore Centre, Charles Vavrus d/b/a Charlie Club, Tennis Corporation of America, Women's Workout World, Inc., Women's Workout World II, Inc., Central World, Inc., The River Club, Inc. d/b/a The River Club, Hyde Park Athletic Club, Inc., Combined Fitness Centre-LaSalle, Inc., Combined Fitness Centre-Randolph, Inc., Combined Fitness Centre-Northbrook, Inc., and Patricia Stanis (an individual dues-paying member of a health club in Chicago), brought this suit in the circuit court of Cook County on January 9, 1986, against defendants, the City of Chicago (city) and certain officials, namely, Ronald Picur, comptroller, Cecil A. Partee, treasurer, and Charles Sawyer, director of revenue. In their complaint, plaintiffs challenged the constitutionality of the December 23, 1985, amendment to the Chicago Amusement Tax Ordinance (Chicago Municipal Code §§104 through 104—8 (1985)), and sought declaratory and permanent injunctive relief.

Defendants filed a motion to dismiss the complaint for failure to state a cause of action. Plaintiffs then filed an amended complaint, and also filed a motion for a preliminary injunction. Defendants let their motion to dismiss the original complaint stand as a basis for dismissing the amended complaint, but filed an additional motion to strike portions of plaintiffs' reply brief, and a

motion to strike plaintiffs' exhibits. The court denied the
defendants' motions and held that the amendment to the
ordinance was an unlawful occupation tax in violation of
article VII, section 6(e)(2), of the Illinois Constitution (Ill.
Const. 1970, art. VII, §6(e)(2)), and was unconstitution-
ally vague in that it violated plaintiffs' rights to due pro-
cess under the Illinois and United States Constitutions.
In addition, the circuit court granted a preliminary in-
junction preventing defendants from enforcing the De-
cember 23, 1985, amendment. The circuit court ex-
pressly found that there was no just reason to delay
appeal of these rulings.

The appellate court, with one justice dissenting, held
that the December 23, 1985, amendment to the Chicago
Amusement Tax (Chicago Municipal Code §§104–1
through 104–8 (1985)) was constitutional in all respects
(155 Ill. App. 3d 482) and therefore found that the cir-
cuit court erred in denying the motion to dismiss and
granting the preliminary injunction. We granted plain-
tiffs' petition for leave to appeal (107 Ill. 2d R. 315).

I. Summary of Amendment and Related Provisions

In 1947 the City of Chicago enacted an amusement
tax ordinance which imposed a tax on organizers, spon-
sors and promoters of various enumerated spectator and
participatory events. In 1980 the ordinance was
amended to shift the tax from the providers to their pa-
trons. (Chicago Municipal Code §§104–1 through 104–2
(1980).) Since then, the Chicago Amusement Tax Ordi-
nance has provided for a tax upon the *patrons* of amuse-
ments located within the city. The city taxes the privi-
lege of witnessing, viewing or participating in such
amusements.

On December 23, 1985, the city amended this ordi-
nance, and it is this amendment which the plaintiffs chal-

lenge. The ordinance was amended to include racquetball and health clubs as follows:

"[A]ny entertainment or recreational activity offered for the public participation or *on a membership or other* basis including but not limited to *racquetball* or *health clubs*, carnivals, amusement park rides and games, bowling, billiard and pool games, dancing, tennis, racquetball, swimming, weightlifting, body building or similar activities." (Emphasis added.)

This amendment thus adds health clubs and racquetball clubs to the list of "amusements" for purposes of the Amusement Tax Ordinance. While this case was pending in the circuit court the city, on February 26, 1986, passed a related amendment which brought "social and eating clubs" within the definition of "amusement" and also reduced from 4% to 2% the tax rate to be paid by members and guests of health, social and eating clubs (Chicago Municipal Code §§104—1 through 104—2.1 (1986)). The February 26, 1986, amendment was challenged by the Chicago Athletic Club (Chicago Athletic Club v. City of Chicago, No. 86 CH 3116) in the circuit court of Cook County. In that case an agreed order was entered exempting social and eating clubs from the amusement tax, in effect holding that social and eating clubs are not "amusements" within the meaning of the amusement tax. This latter amendment is not in issue here and further references to an amendment will be to the December 23, 1985, amendment.

In addition to adding racquetball and health clubs to the list of amusements, the amendment at issue here makes the owners, managers, and operators of amusements the collectors for and on behalf of the city. They are responsible for collecting the tax, keeping accurate records of the moneys collected, and remitting the tax collected to the city. Furthermore, the ordinance subjects them (owners, managers or operators) to penalties and

interest for failing to perform these duties. That is, the provider remains liable to pay the taxes if the patron fails or refuses to pay.

## II. Motion to Dismiss

Regarding the section 2—615 motion to dismiss for failure to state a cause of action (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), we note that defendants sought therein to have the complaint dismissed both because the challenged ordinance was constitutional and because of numerous asserted technical pleading deficiencies. The verified facts alleged in the complaint must be taken as true and correct for the purpose of the motion to dismiss (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317-18), including allegations contained within the exhibits attached to the complaint (*Mineral Resources, Inc. v. Classic Coal Corp.* (1983), 115 Ill. App. 3d 114, 119). Having reviewed the complaint, we believe that the circuit court properly rejected the numerous technical pleading challenges which defendants asserted in the motion.

In denying the motion, however, the circuit court also found that, as alleged in the complaint and the motion for preliminary injunction, the amended ordinance was unconstitutional. We shall address these constitutional questions when discussing the preliminary injunction.

## III. Preliminary Injunction

When a circuit court is determining the propriety of a preliminary injunction, it must consider whether the plaintiff is likely to succeed on the merits, and whether the plaintiff's rights will be irreparably harmed if this equitable form of relief is not immediately granted. (See, e.g., *Central Building & Cleaning Co. v. Vodnansky* (1980), 84 Ill. App. 3d 586.) On appeal from the grant or

denial of a preliminary injunction an appellate court is to consider whether the circuit court abused its sound discretion in evaluating these considerations and granting or denying the preliminary injunction. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830.

When moving for a preliminary injunction in the instant case, the plaintiffs asserted that they were likely to succeed on the merits, that no adequate remedy at law existed, and that if a preliminary injunction were not immediately granted they would suffer irreparable harm. In appealing the grant of the preliminary injunction and the denial of the motion to dismiss, defendants argued only the likelihood of success on the merits, *i.e.*, they focused on the constitutionality of the amendment. Before this court as well, the parties have likewise concentrated on the question of whether the ordinance is constitutional. Therefore, we, too, focus on this question, rather than on an evaluation of the risk of irreparable harm and inadequacy of a legal remedy, in deciding whether the preliminary injunction was appropriate.

A brief summary of the parties' contentions on the constitutionality of the amendment will facilitate a discussion of the individual constitutional issues. Defendants submit that the amendment was properly enacted pursuant to the city's home rule power. Plaintiffs contend that the amendment is an "occupation tax" which, according to article VII, section 6(e), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6(e)), a home rule unit cannot enact absent the General Assembly's authorization. Defendants deny this and further argue that, even assuming, *arguendo*, that the tax is an occupation tax, it is nevertheless valid because the General Assembly has expressly authorized it in section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5), which provides in pertinent part that

"the corporate authorities of each municipality may ***
tax *** amusements and may *** tax *** all places for
*** amusement." Plaintiffs deny that the tax can prop-
erly be deemed either an amusement tax or a tax on
places of amusement. Plaintiffs further assert that, even
if the tax is in fact an amusement tax, it is nevertheless
unconstitutional because it has an extraterritorial effect
prohibited by article VII, section 6(a), of the Illinois Con-
stitution of 1970. Plaintiffs also submit that the amend-
ment violates the uniformity requirements of article IX,
section 2, of the Illinois Constitution (Ill. Const. 1970,
art. IX, §2) as well as the equal protection guarantees of
the Illinois and United States Constitutions.

We find that the amendment imposes an occupation
tax within the meaning of article VII, section 6(e), of the
Illinois Constitution and that the General Assembly has
not authorized the tax as an amusement tax or a tax on
places of amusement.

### A. The Tax Is an Occupation Tax

Defendants submit that the tax involved herein is not
an occupation tax because it is expressly imposed upon
the patrons, rather than the operators, of the health and
racquetball clubs. However, the fact that the legal inci-
dence of the tax is ostensibly placed upon the members
of the club is not dispositive of the question of whether
the tax is an unauthorized service occupation tax. We
recognized this principle in *Commercial National Bank
v. City of Chicago* (1981), 89 Ill. 2d 45, 67, where we
stated that the "mere recitation in the ordinance that
the tax is upon purchasers" does not "transform an oc-
cupation tax into a tax upon the purchaser."

In *Commercial National Bank* we emphasized the re-
lationship between the constitutional restriction on in-
come taxes and the constitutional restriction on occupa-
tion taxes (both of which are contained in article VII,

section 6(e), of the Constitution of 1970). We noted that an apparent purpose of prohibiting home rule units from imposing "occupation" taxes not expressly authorized by statute was to prevent those units from evading the constitutional restriction on income taxes by labeling such taxes "occupation" taxes. In view of this purpose we stated, "The mere recitation in the ordinance that the tax is upon *purchasers* of services does not eliminate the evils [which] the delegates to the convention sought to prevent." (Emphasis added.) 89 Ill. 2d at 67.

As in *Commercial National Bank*, in order to abide by this particular constitutional provision we must look to this ordinance's practical operation and effect rather than only to a facial declaration contained therein. In doing so it becomes apparent that, although the tax may ostensibly fall on individuals receiving the clubs' services, the tax truly is an "occupation" tax within the meaning of section 6(e). The clubs are not only responsible for collecting and remitting the tax to the city, but are also responsible for paying the tax to the city *regardless* of whether their patrons fail or refuse to remit the tax. Additionally, the health clubs are subject to some very substantial penalties for any delays in submitting the tax payments. These are largely the same types of considerations which we found persuasive in *Commercial National Bank*, 89 Ill. 2d at 66-67, and *Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 254-55, in determining that the taxes involved therein were *de facto* occupation taxes.

In analyzing the substantive impact of this tax as an occupation tax, we have reviewed Chicago Department of Revenue Ruling 86—1 (February 17, 1986) in conjunction with the ordinance at issue here, which the revenue ruling purports to interpret. The ruling in part attempts to exculpate club operators who make a "good faith" un-

successful effort to collect and remit the tax. This ruling, issued during the pendency of this litigation, is a clear effort to address the amendment's asserted constitutional infirmities. The "good faith" language is clearly intended to respond to an argument that the substantive burden of the tax herein is that of an occupation tax. However, this administrative "interpretation" is not in accord with the language of the ordinance itself, which subjects operators to penalties for failures or errors unless they are "not due *to any fault* on the part of the person required to remit the tax." (Emphasis added.) This quoted language of the ordinance clearly encompasses negligent, as opposed to merely intentional, failures on the part of club operators. A self-serving administrative ruling obviously cannot amend an ordinance to save it from constitutional infirmities.

In reaching our conclusion that an occupation tax is involved herein, we have not overlooked defendants' argument in their brief that "even if the ordinance did impose a tax upon amusement providers, it would not be an occupation tax because the express terms of the ordinance impose the tax with respect to '*any* amusements within the city of Chicago' (Sec. 104—2A), irrespective of whether they are provided by those engaged in the occupation of presenting amusements or by those engaged in a hobby, diversion or occasional fund-raising enterprise." (Emphasis in original.) The ordinance, even as amended, undoubtedly imposes numerous nonoccupational taxes, taxing activities which may in fact be offered by those engaged in a "hobby, diversion or occasional fund-raising enterprise," as defendants suggest. However, by defining "amusement" to include "racquetball or health clubs," and by further establishing a tax on those clubs' membership fees, the city has gone far beyond merely taxing particular activities (*cf. Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d

10), and has imposed a tax unique to those types of commercial enterprises. Realistically viewed, it is clear that a tax on membership fees on health and racquetball club memberships is a tax on those occupations.

B. The Tax Is Not Authorized by Section 11—42—5

Defendants claim and the majority of the appellate court held that even if the amendment imposes an occupation tax it is nevertheless valid because it is authorized under section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5). That provision states in part:

"The corporate authorities of each municipality may license [and] tax *** theatricals and other exhibitions, shows, and amusements ***." Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5.

Cities and villages are thus granted specific power by the aforesaid provision to license, tax and regulate amusements and places of amusement. We must determine whether the city has acted within the scope of this statutory authorization. In this regard we note initially defendants' argument that even if not all of the activities carried on at health and racquetball clubs are "amusements," the tax is still proper because section 11—42—5 authorizes a tax not only on amusements but also on *places* of amusement. The city indicates that since at least *some* amusement activities occur at health and racquetball clubs, a tax imposed on the receipts of such establishments is proper. This argument is irrelevant since the ordinance involved herein does not purport to impose a tax on these clubs as "places of amusement," but instead imposes a tax on "amusements," which the amended ordinance defines to include activities carried on at health and racquetball clubs. Moreover, the statutory authorization to tax places of amusement cannot reasonably be said to authorize a tax on establish-

ments not at least *predominately* engaged in offering amusement activities. Therefore, if we conclude that the activities being taxed by the amended ordinance are not predominately amusements, then the tax also could not be justified as a tax upon "places of amusement." We thus turn to a discussion of the term "amusement."

This court has indicated that the word "amusement" is synonymous with diversion, entertainment, recreation, pastime and sport. (See, *e.g., City of Chicago v. Green Mill Gardens* (1922), 305 Ill. 87, 93; *Stiska v. City of Chicago* (1950), 405 Ill. 374, 379.) The term "amusement" is clearly broad enough to include participative entertainment and is not limited to that of an exhibitory nature. However, entertainments of many kinds may be exhibitive or participative and yet not be classed as amusements; each case must depend upon its own particular facts.

The question of what constitutes an "amusement" for the purposes of section 11—24—5 has been a much litigated issue. Section 11—42—5 has been interpreted to apply to a host of traditional spectator and participatory amusements: tennis (*Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1976), 63 Ill. 2d 400), horse racing (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10), amusement parks (*Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146), and movie theaters (*Kerasotes Rialto Theater Corp. v. City of Peoria* (1979), 77 Ill. 2d 491). In these cases, however, this court was not asked to uphold a tax on a membership fee which covered a wide variety of both amusement and nonamusement activities. Such is the case here. For example, while we could not dispute that racquetball is as much an amusement as tennis, the various health and racquetball clubs responsible for the taxes herein offer not only racquetball but also such diverse services as nutritional instructions, weight loss

counseling, diet counseling, cardiovascular examinations and counseling, and instruction in weightlifting and other physical fitness activities. We certainly recognize that, as the city asserts, many such clubs also offer such sports as swimming and volleyball. However, in view of the wide variety of nonamusement activities carried on at these clubs, we simply cannot conclude that a tax on their membership fees is a tax on either "amusements" or "places of amusement."

Citing *Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 48, *H. K. H. Development Corp. v. Metropolitan Sanitary District* (1964), 47 Ill. App. 2d 46, 51, and *People ex rel. Edgar v. Miller* (1982), 110 Ill. App. 3d 264, defendants argue that the circuit court, in evaluating the nature of the activities occurring at these clubs, relied on affidavits which were not properly before it on a motion for a preliminary injunction. In this regard we note initially that defendants did not raise this issue in the appellate court and thus have not preserved it for this court's review. Additionally, we note that the diversity of services and activities commonplace in these health and racquetball clubs is not something beyond the common knowledge of most individuals who, if not having visited such a club, have certainly been exposed to the widespread advertisements and other promotional activities common in those competitive enterprises. Accordingly, we cannot say that defendants were prejudiced by the admission of these affidavits, even if admission thereof was improper.

Defendants also submit that any concern that the tax on fees paid to health and racquetball clubs encompasses a tax on nonamusement activities can be resolved by reference to Chicago Department of Revenue Ruling 86—1 (discussed above in conjunction with the determination that an occupation tax is involved herein). Ruling 86—1 attempts to authorize "amusement providers" to segre-

gate charges for "amusements" from charges for "instructors" or for "the purchase of goods," and thus avoid having such services and items taxed. In our view, this ruling attempts to insulate from taxation activities which the ordinance clearly deems taxable. This ruling cannot be used to restrict application of the ordinance in a manner not intended by the ordinance's drafters, in order to save the ordinance from a constitutional challenge. The plain language of the amended ordinance of December 23, 1985, does not distinguish between service and nonservice components of the entities remitting the tax, and there is nothing in the amended ordinance to support defendant's "theory" that the tax applies to anything less than the gross receipts of health and racquetball clubs. Moreover, it seems simply impossible to fully segregate health club membership into amusement and nonamusement components.

## IV. Conclusion

We thus conclude that the amendment at issue herein imposes a service occupation tax and that the tax is neither solely nor even predominately a tax on "amusements" or "places of amusements" within the meaning of section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5). Accordingly, while we can appreciate that some home rule units, as well as other units of local government, may have financial problems, we must nevertheless hold that the instant tax on health and racquetball clubs is unconstitutional. Having found the amendment unconstitutional on this basis, we need not address plaintiffs' alternative constitutional challenges.

Finding a portion of a legislative enactment unconstitutional does not render the entire enactment unconstitutional unless it can be said that the legislators would not have passed the legislation with the invalid portion

eliminated. (*Commercial National Bank*, 89 Ill. 2d at 73.) In the instant case it is clear that no such conclusion can be reached. Accordingly, we limit our holding to application of the amended ordinance to health and racquetball clubs.

We thus find that the circuit court properly granted the preliminary injunction and denied the motion to dismiss. Accordingly, we reverse the judgment of the appellate court, affirm the decision of the circuit court, and remand to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

JUSTICE RYAN, specially concurring:

I concur with the court that this amendment, which places a tax on membership in a racquetball or health club, constitutes an occupation tax which has not been authorized by the General Assembly. However, I believe the opinion is not clear in its analysis for determining whether a tax is an occupation tax within the meaning of article VII, section 6(e), of our Constitution of 1970.

According to the majority opinion, the tax on membership in a racquetball or health club constitutes an occupation tax because "[t]he clubs are not only responsible for collecting and remitting the tax to the city, but are also responsible for paying the tax to the city *regardless* of whether their patrons fail or refuse to remit the tax. Additionally, the health clubs are subject to some very substantial penalties for any delays in submitting the tax payments." (Emphasis in original.) (124 Ill. 2d at 10.) The fact that the clubs have to collect the tax and that there is a penalty for the delay is not the dispositive factor in determining whether the tax is an occupation tax. If such were the case, other home rule

taxes upheld by this court would have constituted occupation taxes. See, *e.g., Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391 (gasoline fuel tax); *Mulligan v. Dunne* (1975), 61 Ill. 2d 544 (liquor tax); *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56 (cigarette tax).

Recently, this court held that an ordinance which imposed a tax on vehicle fuel, which the dealers were required to collect and which imposed penalties on the dealers for failure to collect the tax, did not constitute an occupation tax. (*Illinois Gasoline Dealers*, 119 Ill. 2d 391.) In that case, we stated that the practical effect of a tax analysis was not relevant because the tax was one which the constitutional convention expressly indicated was permissible. 119 Ill. 2d at 400.

The first step in determining whether the tax is constitutional is to look at the relevant constitutional provision. The 1970 Illinois Constitution provides:

"(e) A home rule unit shall have only the power that the General Assembly may provide by law *** [to] impose taxes *** upon occupations." (Ill. Const. 1970, art. VII, §6(e).)

This court has considered transcripts from the constitutional convention in order to interpret language of the Constitution. (See *People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 366-67.) The Record of Proceedings from the constitutional convention further clarifies what are permissible home rule taxes that do not constitute occupation taxes. (*Illinois Gasoline Dealers Association v. City of Chicago*, 119 Ill. 2d at 400, citing 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1655-56.) The transcripts from the constitutional convention reveal that under a city's home rule power, it can tax liquor, food, hotel rooms, gasoline, etc. During the constitutional debates, these taxes, which a home rule unit can levy, were imprecisely referred to as

excise taxes or sales taxes. However, it was clearly indicated in the debates that a sales tax measured on the sale of services is to be considered as an occupation tax, which a home rule unit may not levy.

Thus, determining whether the tax imposes all legal responsibilities and obligations on the person engaged in providing the service (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 68) becomes significant only after a determination that the tax is not similar to the examples set forth by the local government committee of the constitutional convention as permissible home rule taxes. We discussed this distinction in our recent decision in *Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 400-01, and noted that the shifting of the incidence of the tax was not, in that case, an attempt to evade the intent of the constitutional convention to prohibit a tax on the sale of services.

As indicated in the opinion in our case, a tax on membership fees or dues of health and racquetball clubs is not such a tax as the delegates to the constitutional convention intended home rule units to levy. This tax cannot be classified as what the delegates understood to be an excise tax or a tax on the sale of tangible personal property. These clubs perform services, and the tax is measured not by participation in or admissions to individual events, but on membership dues collected by the clubs. It is in the nature of a service tax and, as such, is similar to those taxes held invalid in *Commercial National Bank v. City of Chicago*. As indicated in the constitutional debates, there was concern by the delegates that a proliferation of such taxes, as are involved in this case and in *Commercial National Bank*, would, in effect, nullify the intention that taxes levied on or measured by income not be levied by home rule units, absent the grant of authority from the General Assembly. These de-

bates were discussed at length by this court in *Commercial National Bank v. City of Chicago* and further discussed in our recent holding in *Illinois Gasoline Dealers Association v. City of Chicago*. I specially concur in the case now before us because I feel that the majority did not clearly set forth the holding of *Commercial National Bank v. City of Chicago*, which we analyzed in *Illinois Gasoline Dealers Association v. City of Chicago*.