COMMUNICATIONS AND CABLE OF CHICAGO, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—95—4358

Opinion filed July 12, 1996.

Dean A. Dickie, James K. Meguerian, William K. Bass, and Andrew M. Slobodien, all of D'Ancona & Pflaum, of Chicago, and John D. Seiver, Wesley R. Heppler, and Robert G. Scott, all of Cole, Raywid & Braverman, of Washington, D.C., for appellants.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Diane M. Pezanoski, and Robin W. Cozette, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

The plaintiffs, Communications & Cable of Chicago, La Salle Telecommunications, South Chicago Cable, collectively doing business as Chicago Cable TV, and the Cable Television and Communications Association of Illinois, sought declaratory and injunctive relief

against the defendants, the Chicago department of revenue and its acting director, Ernest R. Wish, challenging the constitutionality of the November 15, 1995, amendment to the Chicago amusement tax ordinance (Chicago Municipal Code § 4—156—010 *et seq.* (1990)). The trial court denied the plaintiffs' motion and expressly found that there was no just reason to delay the appeal of his ruling. Plaintiffs now appeal (134 Ill. 2d R. 307(a)), contending the trial court abused its discretion in denying their motion for injunctive relief because (1) the amended tax is an unauthorized occupation tax in violation of article VII, section 6(e), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(e)), (2) the amended tax constitutes a franchise fee which violates the Communications Policy Act of 1984 (Cable Act) (47 U.S.C. § 542 (1994)), (3) the amended tax is a nonuniform tax prohibited by article IX, section 2, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), and (4) plaintiffs established the risk of irreparable harm and the inadequacy of legal remedy necessary to support the grant of a preliminary injunction. We affirm.

## BACKGROUND

Plaintiffs are in the business of providing cable television services to over 200,000 residents of the City of Chicago. Plaintiffs' programming includes news, religious, informational, shopping, weather, public access, educational and governmental affairs channels as well as more traditional entertainment and movie channels. Plaintiffs were, because of their status as a business operating a "community antenna television system" as defined by section 11—42—11 of the Illinois Municipal Code (65 ILCS 5/11—42—11(b) (West 1994)), subject to a franchise fee. Section 11—42—11 of the Illinois Municipal Code provides, *inter alia*, that the corporate authorities of each municipality may license, franchise and tax the business of operating a community television system. The defendants, therefore, as a franchising authority, collect a 5% franchise fee on the gross revenues collected by the plaintiffs.

On November 15, 1995, the Chicago city counsel passed an amendment to the Chicago amusement tax ordinance (Chicago Municipal Code § 4—156—010 *et seq.* (1990)), which was formally adopted on December 13, 1995. This amendment, effective on January 1, 1996, provided for additional taxation of the services provided by the plaintiffs. Section 4—156—020 of the Chicago Municipal Code provides in pertinent part:

> "An amusement tax is imposed upon the patrons of any amusement within the city in an amount equal to seven percent of the admission fees or other charges paid for the privilege to enter, to

witness, to view or to participate in such amusement ***." Chicago Municipal Code § 4—156—020(A) (November 10, 1994).

Section 4—156—010, as amended, includes the following definition of "amusement":

"(3) any paid television programming, whether transmitted by wire, cable, fiber optics, laser, microwave, radio, satellite or similar means." Chicago Municipal Code § 4—156—010 (December 13, 1995).

On December 13, 1995, plaintiffs filed a complaint for declaratory judgment and injunctive relief challenging the constitutionality of the city's amended amusement tax. The complaint alleged that, prior to its amendment, the amusement tax specifically excluded all "amusements" of any kind utilized or viewed in the home.[1] Under the amended tax, plaintiffs must collect the 7% tax from its subscribers for remittance to the city or face penalties. The tax would apply to all programming services provided by plaintiffs but would not apply to revenues from equipment rental and installation. According to the complaint, many of the programs available from plaintiff are also available from video rental stores, computer on-line services and other methods of delivery that are not subject to the amusement tax.

In their complaint, plaintiffs argued that the amusement tax, as applied to them, is invalid for several reasons. First, plaintiffs argued that, as amended, the amusement tax constitutes an unauthorized occupation tax in violation of article VII, section 6(e), of the Illinois Constitution. Ill. Const. 1970, art. VII, § 6(e). Second, plaintiffs argued that the tax is a nonuniform tax that violates the prohibition of article IX, section 2, of the Illinois Constitution. Third, plaintiffs asserted that the tax applies selectively to cable operations and thus violates the equal protection clauses of the United States and the Illinois Constitutions as well as the first amendment rights of the plaintiffs and their customers. Fourth, plaintiffs alleged that the amended tax exceeds the 5% limit allowed under the federal Cable Act and thus renders the amended tax void under the supremacy clause of the United States Constitution.

In moving for preliminary injunctive relief, plaintiffs argued that the court had to enjoin the defendants from enforcing the amended tax because requiring the plaintiffs to collect the tax from their subscribers would result in an irreparable loss of good will, there was not enough time for the plaintiffs to modify their billing procedures to include the tax, the tax would put the plaintiffs at a significant

---

[1] Prior to the effective date of the amendment, the code contained an express exemption for in-home amusements.

disadvantage with other competitors, and if plaintiffs' challenge to the constitutionality of the tax was ultimately successful, it would be impossible to credit the plaintiffs for the taxes collected.

At the conclusion of the hearing on plaintiffs' motion, the trial court entered an order finding that plaintiffs had failed to prove any of the elements necessary to establish the right to a preliminary injunction and denied their motion.

## ANALYSIS

### I. Motions Taken With the Case

■ On February 21, 1996, plaintiffs filed a motion to bring new information before the court. Defendants filed an objection and the motion was taken with the case. Plaintiffs seek to introduce evidence and additional argument relating to the recently enacted Telecommunications Act of 1996, Pub. L. No. 104—104. Plaintiffs argue that this federal statute, which expressly preempts the local taxation of direct-to-home satellite services, would support an argument by plaintiffs that their equal protection rights were violated. As defendants note in their objection to this motion, plaintiffs have not presented this court with an equal protection argument on appeal. Moreover, while such an argument was made in the trial court, that court was not presented with the information the plaintiffs now ask us to consider in evaluating the propriety of the trial court's ruling. For these reasons, the plaintiffs' motion is denied. See *Johnson v. Johnson*, 244 Ill. App. 3d 518 (1993); *Clark v. Han*, 272 Ill. App. 3d 981 (1995).

### II. Preliminary Injunction

■ A preliminary injunction is a provisional remedy granted to preserve the status quo pending a hearing on the merits of the case. *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557 (1992). A preliminary injunction is an extraordinary remedy that is used only where an extreme emergency exists and where, in the absence of an injunction, serious harm would result. *Label Printers v. Pflug*, 206 Ill. App. 3d 483 (1991). In order to establish a right to a preliminary injunction, a plaintiff must demonstrate that (1) he had a protectible right; (2) he would suffer irreparable injury if injunctive relief was not granted; (3) his recovery at law was inadequate; and (4) there was a likelihood that he would succeed on the merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373 (1985); *Heerey v. Berke*, 179 Ill. App. 3d 927 (1989). A trial court's denial or grant of a preliminary injunction will not be reversed absent an abuse of discretion. *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1 (1988).

On appeal, plaintiffs argue that they demonstrated a likelihood of success on the merits on several bases. First, plaintiffs assert that, as amended, the City of Chicago's amusement tax ordinance (Chicago Municipal Code ch. 4—156 (eff. January 1, 1996)) constitutes an unauthorized "occupational tax" in violation of article VII, section 6(e)(2), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(e)(2)).

## A. Occupational Tax

■ Article VII, section 6(e)(2), of the Illinois Constitution provides that a home rule unit has only the power that the General Assembly may provide by law to license for revenues or impose taxes upon or measured by income or earnings or upon occupations. Ill. Const. 1970, art. VII, § 6(e)(2). Accordingly, absent specific authorization from the General Assembly, a home rule unit may not impose a tax upon an occupation or income. *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45 (1982).

■ An "occupational tax" is one that in practical effect imposes a tax upon a given occupation or the provider of particular services. See *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491 (1979). In determining whether a particular tax has been imposed upon an occupation or provider of services, Illinois courts have looked at the following factors: (1) who bears the responsibility for collecting and remitting the tax to the city (*Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1 (1988)); (2) whether the provider of services is responsible for payment of the tax regardless of whether the patrons pay the tax (*Commercial National Bank v. City of Chicago*, 89 Ill. 2d at 66-67); and (3) whether the provider of services is subject to penalties for nonpayment of the subject tax (*Waukegan Community Unit School District No. 60 v. City of Waukegan*, 95 Ill. 2d 244 (1983)). A simple declaration by the home rule body that a given tax is imposed on the purchaser of services is not sufficient to avoid the restrictions imposed by the constitution. As our supreme court has noted:

> "The type of tax is not changed by any name that may be given it under the law through which it is enacted ***." *Reif v. Barrett*, 355 Ill. 104, 109-10 (1933).

Rather, it is the practical operation of the ordinance that determines where the legal incidence of the tax falls and therefore the nature of the tax. *Gurley v. Rhoden*, 421 U.S. 200, 44 L. Ed. 2d 110, 95 S. Ct. 1605 (1975). Accordingly, the practical effect of the entire ordinance must be examined in determining whether or not the tax imposed by the ordinance falls within the proscription of section 6(e) of article VII.

On appeal, plaintiffs analogize the present situation to that in *Commercial National Bank v. City of Chicago* and argue that a simi-

lar result should occur. In *Commercial National Bank v. City of Chicago*, our supreme court held that the Chicago service-tax ordinance was an unconstitutional attempt to impose a tax upon occupations without authorization by the General Assembly. In reaching this conclusion, the court noted that the ordinance had the practical effect of imposing the tax on the plaintiff provider of services because the ordinance, while expressly imposing the tax upon the purchaser, nonetheless placed the collection and remittance duties on the provider, who remained liable for uncollected taxes. *Commercial National Bank v. City of Chicago*, 89 Ill. 2d at 68-70. After examining the legislative debate regarding section 6(e) of article VII, the court stated:

"We cannot close our eyes to, nor can we ignore, that which is clearly the intent of the delegates to the convention. Some meaning must be given to the restriction of section 6(e)(2) of article VII. If we permit this restriction to be nullified by simply inserting a few words in an ordinance, which ostensibly impose the legal incidence of a tax upon the purchaser while the ordinance as a whole places the responsibilities and penalties for the tax upon the seller of services, we will have effectively repealed, or deleted from our constitution, the requirement that authorization by the General Assembly must first be given before a home rule unit may impose taxes upon occupations. To approve the ordinance before us would, in effect, eliminate this limitation and deprive it of any meaning." *Commercial National Bank v. City of Chicago*, 89 Ill. 2d at 68.

In the present case, the amusement tax ordinance also requires the plaintiffs to collect and remit the taxes to the city. Section 4—156—030 provides in pertinent part:

"A. It shall be the duty of every owner, manager or operator of an amusement or of a place where an amusement is being held, and of every seller of tickets to an amusement, to secure from each patron the tax imposed by section 4—156—020 of this article and remit the tax to the department of revenue not later than the last day of each calendar month for all admission fees or other charges received during the immediately preceding calendar month ***. A verified statement of admission fees or charges in a form prescribed by the director of revenue shall accompany each remittance. Acceptance by the city of any amount tendered in payment of the tax shall be without prejudice to any claim, demand or right on account of any deficiency.

B. Every person required to collect and remit the tax imposed by section 4—156—020 of this article, or pay the tax directly to the department, shall keep accurate books and records of its busi-

ness or activity, including original source documents and books of entry denoting the transaction that gave rise, or may have given rise, to the tax liability or any exemption that may be claimed. All such books, records and accounts shall be available for inspection by the department at all reasonable times during business hours of the day.

C. Every owner, manager, operator or reseller of tickets, who is required to collect the tax imposed by section 4—156—020 of this article shall be considered a tax collector for the city. All amusement tax collected shall be held by such tax collector as trustee for and on behalf of the city. The failure of the tax collector to collect the tax shall not excuse or release the patron from the obligation to pay the tax." Chicago Municipal Code §§ 4—156—030(A) through (C) (1995).

Additionally, section 4—156—140 of the ordinance provides that any person who violates any of the provisions of the chapter is subject to fines.

Plaintiffs contend that the foregoing language of the ordinance clearly established a tax which, in practical effect, is imposed upon the occupation of providing cable services. Defendants counter by pointing out that our supreme court has made it clear that requiring a wholesaler or retailer of goods or a provider of amusements to collect and remit a tax does not necessarily make the tax occupational. See *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972) (tax upon sale of cigarettes held not to be an occupational tax even though responsibility for collecting and remitting tax was imposed upon the wholesaler and retailer); *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491 (amusement tax that owner or operator of the amusement was responsible for collecting, remitting and documenting was not an occupational tax because the ultimate incidence of the tax was on the patrons).

■ In the present case, a duty to collect, document and remit the amusement tax was imposed upon the plaintiffs and other amusement owners. Additionally, the ordinance subjects the plaintiffs to fines should they fail to fulfil these duties. While this case can be distinguished on the basis that this ordinance, unlike the one at issue in *Commercial National Bank v. City of Chicago*, did not specifically make the plaintiffs liable for taxes not paid by the patrons, we believe that for the purposes of demonstrating a right to a preliminary injunction, plaintiffs made an adequate showing that there was merit to their claim that the amended amusement tax as applied to them was an "occupational tax." See *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d at 10-11.

## B. The Tax is Authorized by Section 11—42—5

Accordingly, we must now determine whether or not this tax was specifically authorized by the General Assembly, as, absent such an authorization, the tax would run afoul of the constitutional prohibition of unauthorized occupational taxes. Defendants contend that even if the amendment imposes an occupational tax it is nevertheless valid because it is authorized under section 11—42—5 of the Illinois Municipal Code (65 ILCS 5/11—42—5 (West 1994)). That provision states in part:

> "The corporate authorities of each municipality may license [and] tax *** theatricals and other exhibitions, shows, and amusements and may license, tax, and regulate all places for eating or amusement." 65 ILCS 5/11—42—5 (West 1994).

Plaintiffs respond by arguing that because they provide informational, educational and other nonamusement programming, their services are not predominately "amusement" and cannot be taxed as such. In support of their position, plaintiffs cite *Chicago Health Clubs, Inc. v. Picur.*

In *Chicago Health Clubs, Inc. v. Picur*, the plaintiff health-club owners challenged the constitutionality of an amendment to the Chicago amusement tax ordinance that made membership fees to their establishments subject to the amusement tax. After finding that the ordinance imposed an occupational tax on the plaintiffs, the court went on to address whether such had been authorized by the General Assembly under section 11—42—5 of the Illinois Municipal Code. In doing so, the court stated:

> "Moreover, the statutory authorization to tax places of amusement cannot reasonably be said to authorize a tax on establishments not at least *predominately* engaged in offering amusement activities." (Emphasis in original.) 124 Ill. 2d at 12-13.

The court then held that, because many of the activities offered at plaintiffs' clubs were not those of "amusement," the ordinance was not authorized by section 11—42—5 of the Illinois Municipal Code and therefore constituted an unauthorized tax in violation of the Illinois Constitution. In making this determination, the court stated:

> "[W]hile we could not dispute that racquetball is as much an amusement as tennis, the various health and racquetball clubs responsible for the taxes herein offer not only racquetball but also such diverse services as nutritional instructions, weight loss counseling, diet counseling, cardiovascular examinations and counseling, and instruction in weightlifting and other physical fitness activities. *** [I]n view of the wide variety of nonamusement activities carried on at these clubs, we simply cannot conclude that a tax on their membership is a tax on either 'amusements' or

'places of amusement.' " *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d at 13-14.

Plaintiffs in this case contend that a similar type of analysis should be applied to the present situation. That is, plaintiffs argue that because their programming is not predominately "amusement," section 11—42—5 does not provide authorization for the taxation of their services. We disagree.

Plaintiffs are asking this court to determine whether their services are predominately "amusement" based upon the content of their programming. This was not the type of determination made by the court in *Chicago Health Clubs, Inc. v. Picur*. In that case, the court held that membership fees paid to the plaintiff health clubs could not be taxed as "amusements" or as "places of amusements" because a variety of separate nonamusement *activities* were involved. The court in that case did not undertake a determination of whether any of the given activities itself was predominately one of amusement. Rather, the court stated that "the statutory authorization to tax places of amusement cannot reasonably be said to authorize a tax on establishments not at least *predominately* engaged in offering amusement activities." (Emphasis in original.) *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d at 12-13.

■ In the present case, the single activity of watching television is at issue. Even though the entertainment or amusement quality of the programming may well vary from channel to channel, we cannot say that the trial court abused its discretion in finding that the activity of viewing cable television is subject to taxation as an amusement. We decline to adopt plaintiffs' proposed approach of analyzing the content of the programming provided by their service. The application of such a standard would prove immensely burdensome and problematic, as it would not only require an examination and analysis of the entertainment or amusement value of each program viewed by cable subscribers, but also the content of every entertainment performance viewed by those subject to the amusement tax.

Accordingly, the tax imposed upon the plaintiffs' services in this case does not constitute an unauthorized occupational tax. Rather, the tax is authorized as a tax on an "amusement" activity under section 11—42—5 of the Illinois Municipal Code.

## C. Uniformity

Plaintiffs argue next that the amusement tax is a nonuniform tax that is prohibited by article IX, section 2, of the Illinois Constitution of 1970. Plaintiffs specifically argue that there is no difference between those providing "paid television," who are subject to the tax,

and those who provide similar programming via broadcast television, movie rentals, computer on-line services, the print media and others who are not subject to the tax.

■ The uniformity clause of the state constitution provides that, "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. This clause encompasses the equal protection clause and adds even more limitations on the government. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239 (1992); *North Pole Corp. v. Village of East Dundee*, 263 Ill. App. 3d 327 (1994). Accordingly, if a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d at 247.

■ While classifications for taxation purposes generally carry a strong presumption of validity (*North Pole Corp. v. Village of East Dundee*, 263 Ill. App. 3d at 335), classifications for nonproperty taxes must be based on real and substantial differences between those taxed and those who are not and must also bear some reasonable relationship to the object of the legislation or public policy. *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454 (1987).

■ When a plaintiff presents a good-faith challenge to a tax on the basis of uniformity, the taxing body must produce a justification for its classifications. The plaintiff then has the burden to persuade the court that the defendant's explanations are either insufficient as a matter of law or unsupported by the facts. If plaintiff cannot do this, judgment for the defendant is proper. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d at 248-49. In the present case, we cannot say that the trial court abused its discretion in finding that the plaintiff failed to meet this burden.

At the hearing on the motion for preliminary injunction, plaintiffs did present a good-faith challenge to the tax based on the uniformity clause of the Illinois Constitution. The defendants responded by arguing that the exemption of certain forms of the media from taxation under the ordinance was justified based upon the circumstances. Defendants pointed out that video rentals were already covered by the city's lease transaction tax and that because broadcast television is free it would be too difficult to tax the services. Moreover, defendants argued that the print media was exempted from the tax because of the difficulties involved in determining the situs of those who purchase such materials and because the purchase of a magazine or newspaper is a very different activity than the activities covered by the amusement ordinance.

Similar distinctions have been deemed reasonable and therefore permissible. See *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354 (1986) (administrative convenience of only taxing those who pay for a service deemed proper basis for making distinction). Plaintiffs failed to subsequently argue that the distinctions proffered by the defendants were insufficient as a matter of law or inconsistent with the facts of the case. Accordingly, we cannot say that the trial court abused its discretion in finding that plaintiffs' argument regarding the uniformity clause failed to establish a likelihood of success on the merits.

### D. The Cable Act

Plaintiffs next argue that the amusement tax, as applied to cable television services, constitutes a "franchise fee" under the federal Cable Act and exceeds the permissible percentage of gross revenues collectable thereunder. Alternatively, plaintiffs argue that even if the amusement tax is found to be one of general applicability, and therefore exempt from the percentage limitation, it nonetheless violates the Cable Act because it is unduly discriminatory against cable providers and subscribers.

██ Section 542(b) of the Communications Policy Act (Cable Act) (47 U.S.C. § 542(b) (1991)) limits the "franchise fees" which may be collected from cable operators to 5% of their gross revenues for any twelve month period. The Cable Act further provides:

"The term 'franchise fees' includes any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, *solely because of their status as such*;

(2) the term 'franchise fee' does not include—

(A) any tax, fee, or assessment of general applicability, including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or cable subscribers[.]" (Emphasis added.) 47 U.S.C. § 542(g)(1)(A) (1991).

Defendants argue that the ordinance in question imposed a tax of general applicability which is exempted from the limitations imposed by the Cable Act. According to defendants, because the ordinance applies to businesses other than cable service providers, it is not a "franchise fee" imposed solely because of plaintiffs' status as a cable provider but, rather, a tax of general applicability which is not unduly discriminatory. We agree.

██ The amusement tax applies to providers and patrons of a

wide variety of entertainment activities and events.[2] Accordingly, the tax is not one which is imposed upon cable service providers and their patrons based solely upon their status as such. Rather, they are subject to taxation because of their status as the providers and consumers of entertainment within the city. It is the plaintiffs' inclusion in this much larger group that makes their services subject to taxation. We therefore conclude that the trial court did not abuse its discretion in finding that the amusement tax is, for the purposes of section 542(g), a tax of general applicability.

Moreover, plaintiffs have failed to convincingly argue that the amusement tax is unduly discriminatory. The power to discriminate is inherent in the power to tax. *Leathers v. Medlock*, 499 U.S. 439, 113 L. Ed. 2d 494, 111 S. Ct. 1438 (1991). Courts should defer to local legislative determinations as to the desirability of imposing discriminatory measures in taxation. *City of New Orleans v. Dukes*, 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513 (1976).

While the courts of this state have yet to construe the prohibition of "unduly discriminatory" taxes of general applicability contained in section 542(g)(1)(A), the Arkansas Supreme Court did have occasion to do so in *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992). In that case, the Supreme Court of Arkansas held that the Arkansas gross receipts tax, which was amended to apply to cable television while exempting satellite television services and other forms of media, did not unduly discriminate for the purposes of section 542(g)(1)(A) of the Cable Act. In reaching this conclusion, the court noted that discrimination in taxation is permissible if based upon reasonable distinctions. *Medlock v. Leathers*, 311 Ark. at 179, 842 S.W.2d at 431. That court went on to find that there were several rational bases for making a distinction between cable providers and other media providers of similar programming.

In the present case, the plaintiffs have not shown the amended amusement tax to be unduly discriminatory. As we noted in connection with plaintiffs' previous argument, there are reasonable bases for drawing distinctions between those subject to the tax and those who are not.

For the foregoing reasons, we conclude that the trial court did

---

[2]The ordinance specifically applies to "any exhibition, performance, presentation or show for entertainment purposes, including, but not limited to, any theatrical, dramatic, musical or spectacular performance, promotional show, motion picture show, flower, poultry or animal show, animal act, circus, rodeo, athletic contest, sport, game or similar exhibition such as boxing, wrestling, skating, dancing, swimming, racing or riding on animals or vehicles." Chicago Municipal Code § 4—156—010 (November 17, 1993).

not abuse its discretion in finding that plaintiffs failed to establish a likelihood of success on the merits. Therefore, we need not decide whether plaintiffs established the other elements necessary for the issuance of a preliminary injunction.

The judgment of the circuit court is affirmed.

Affirmed.

GORDON and COUSINS, JJ., concur.